CHARBONEAU v BEVERLY ENTERPRISES, INC

Docket No. 220008. Submitted October 18, 2000, at Detroit. Decided December 26, 2000, at 9:00 A.M. Leave to appeal sought.

Mary H. Charboneau received from a magistrate in the Bureau of Worker's Disability Compensation an open award of weekly worker's compensation benefits payable by Beverly Enterprises, Inc. Beverly filed a claim for review by the Worker's Compensation Appeal Board (WCAB) and, as required by MCL 418.862(1); MSA 17.237(862)(1), commenced paying seventy percent of the awarded weekly benefit. While the claim for review was pending, Beverly filed a separate petition to stop the benefits and recoup the benefits already paid. The magistrate denied Beverly's petition to stop benefits. The WCAB affirmed with modification the award of benefits. Beverly did not appeal the WCAB's decision, paid with interest the thirty percent of benefits it had not paid, and began paying the awarded weekly benefits in full. The Worker's Compensation Appellate Commission (WCAC), which succeeded the WCAB, reversed the magistrate's denial of Beverly's petition to stop benefits. Beverly filed both an application with the Second Injury Fund (SIF) for reimbursement of excess benefits paid and a petition for determination of rights with the bureau. The matter was submitted to a magistrate. The magistrate denied Beverly's request for reimbursement. The WCAC reversed the magistrate's decision and ordered reimbursement. The Court of Appeals denied the SIF's application for leave to appeal. The Supreme Court, in lieu of granting leave, remanded the matter to the Court of Appeals for consideration as on leave granted. The Supreme Court specifically directed the Court of Appeals to consider whether the final disposition of Beverly's separate petition to stop payment of benefits constitutes a final determination triggering the right to reimbursement under subsection 862(1). 459 Mich 999 (1999).

The Court of Appeals held:

Subsection 862(1), which provides for reimbursement from the SIF of worker's compensation benefit payments in excess of the amount finally determined on appeal of an award of benefits, applies only to payments made pursuant to an award that has been appealed under MCL 418.859; MSA 17.237(859), MCL 418.859a; MSA

17.237(859a), MCL 418.860; MSA 17.237(860), MCL 418.861; MSA 17.237(861), or MCL 418.864(11); MSA 17.237(864)(11). Because a petition to stop payment is not a claim for review under one of these statutory sections, subsection 862(1) has no application to such a petition.

Reversed.

WORKER'S COMPENSATION — CLAIMS FOR REVIEW — SEVENTY PERCENT BENEFITS — SECOND INJURY FUND — REIMBURSEMENT.

An employer or worker's compensation carrier that has paid an employee seventy percent of awarded worker's compensation benefits pending the resolution of a claim of review pursuant to § 859, 859a, 860, or 861 or subsection 864(11) of the Worker's Disability Compensation Act may seek reimbursement from the Second Injury Fund for payments made in excess of the amount finally determined only where the final determination is made in proceedings involving the claim of review (MCL 418.859, 418.859a, 418.860, 418.861, 418.862[1], 418.864[11]; MSA 17.237[859], 17.237[859a], 17.237[860], 17.237[861], 17.237[862][1], 17.237[864][11]).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Morrison Zack*, Assistant Attorney General, for Second Injury Fund.

*Lacey & Jones* (by *Gerald M. Marcinkoski*), for Beverly Enterprises, Inc.

Amicus Curiae:

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Mitchell J. Wood*, Assistant Attorney General, for Medical Benefits Reimbursement Fund.

Before: BANDSTRA, C.J., and SAAD and METER, JJ.

BANDSTRA, C.J. This case has been remanded by our Supreme Court for consideration as on leave granted. Defendant Second Injury Fund (SIF) appeals a decision by the Worker's Compensation Appellate Commission (WCAC) reversing the decision of the magistrate that denied defendant Beverly Enterprise's (Bev-

erly's) request for reimbursement of benefits paid to plaintiff Mary H. Charboneau.[1] We conclude that the WCAC decision was based on a misreading of the applicable statute and that Beverly was not entitled to reimbursement under the facts of this case. We reverse.

This case has a long and complex procedural history. In May 1982, plaintiff filed a petition for worker's compensation benefits, alleging that she injured her back and sustained emotional injuries during the course of her employment with Beverly. In a decision mailed on February 18, 1986, the magistrate granted plaintiff an open award of benefits in the amount of $102.54 a week. Beverly commenced paying plaintiff seventy percent benefits at the rate of $71.78 a week, as required by MCL 418.862(1); MSA 17.237(862)(1).

Beverly filed a claim for review of the February 18, 1986, decision with the Worker's Compensation Appeal Board (WCAB). While the claim for review of the magistrate's decision was still pending, Beverly also filed a separate petition to stop benefits and to recoup the benefits previously paid. In a decision mailed on April 21, 1988, the magistrate denied the petition to stop. On or about May 16, 1988, Beverly filed a claim for review of that decision with the WCAB.

On November 20, 1990, while the claim for review of the denial of the petition to stop was pending, the WCAB issued a decision affirming with modification the open award of benefits. Beverly did not seek

---

[1] An amicus brief has been filed by the Medical Benefits Reimbursement Fund (MBRF), which has an interest because of the similarity in language between subsection 862(1) and subsection 862(2). See MCL 418.862(1), (2); MSA 17.237(862)(1), (2).

leave to appeal the WCAB's decision; therefore, it became final. In January 1991, Beverly paid the accrued compensation owing with interest, as required by subsection 862(1), and began paying full weekly benefits.

On August 28, 1992, the WCAC, the successor to the WCAB, entered a decision affirming the magistrate's denial of Beverly's petition to stop benefits. Beverly's application for leave to appeal the WCAC's decision to this Court was denied. Beverly was granted leave to appeal by our Supreme Court, which entered an order on September 20, 1993, remanding the case to the WCAC. *Charboneau v Beverly Enterprises*, 443 Mich 888 (1993). The WCAC remanded the case with instructions that a magistrate prepare a supplemental opinion.

In a decision mailed on April 27, 1994, the remand magistrate denied Beverly's petition to stop. In a decision entered on October 7, 1994, the WCAC reversed the magistrate's decision and granted the petition to stop benefits, effective May 1, 1986. Both this Court and the Supreme Court denied plaintiff's applications for leave to appeal.

On the basis of the October 7, 1994, decision, Beverly filed both an application for reimbursement of excess compensation with the SIF, and a petition for determination of rights with the bureau. The matter was submitted to the magistrate on stipulated facts. In a decision mailed on November 13, 1996, the magistrate denied Beverly's request for reimbursement. The issue for resolution involved the interpretation of subsection 862(1), which states in part that "[i]f the weekly benefit is reduced or rescinded by a final determination, the carrier shall be entitled to reim-

bursement in a sum equal to the compensation paid pending the appeal in excess of the amount finally determined." Noting that the petition for benefits filed by plaintiff and the petition to stop benefits filed by Beverly were never consolidated, the magistrate found that the "final determination" was the WCAB's November 20, 1990, decision affirming the open award of benefits, and not the WCAC's October 7, 1994, decision granting the petition to stop benefits.

Beverly appealed, and in a decision entered on February 24, 1998, the WCAC reversed the decision of the magistrate and ordered reimbursement. The WCAC noted that in *Hiltz v Phil's Quality Market*, 417 Mich 335, 353; 337 NW2d 237 (1983), our Supreme Court held that pursuant to subsection 862(1), if an award of benefits is reduced or rescinded, the employer/carrier is entitled to reimbursement for any amount that exceeds its final liability. The WCAC read *Hiltz* as not limiting this right to reimbursement to causes of action arising out of a petition filed by a claimant. The WCAC concluded that the magistrate's interpretation of subsection 862(1) deprived Beverly of its statutory right to reimbursement of excess amounts paid to plaintiff.

The SIF sought leave to appeal the WCAC's decision, but this Court denied the application for lack of merit. The SIF sought leave to appeal to our Supreme Court. The Supreme Court remanded the case for consideration as on leave granted and instructed that we decide whether Beverly was entitled to reimbursement of the seventy percent benefits paid while the direct appeal from the original open award of benefits was pending. *Charboneau v Beverly Enterprises, Inc*, 459 Mich 999 (1999). This Court was specifically

directed to consider "whether the final disposition of Beverly's separate petition to stop payment of benefits constitutes 'a final determination' triggering the right to reimbursement" under subsection 862(1). *Id.*

This Court reviews de novo a question of law raised by any final order of the WCAC. *Oxley v Dep't of Military Affairs*, 460 Mich 536, 540-541; 597 NW2d 89 (1999). The issue of statutory construction here presents a question of law. Subsection 862(1) provides:

> A claim for review filed pursuant to section 859, 859a, 860, 861, or 864(11) shall not operate as a stay of payment to the claimant of 70% of the weekly benefit required by the terms of the award of the worker's compensation magistrate or arbitrator. Payment shall commence as of the date of the worker's compensation magistrate's or arbitrator's award, and shall continue until final determination of the appeal or for a shorter period if specified in the award. Benefits accruing prior to the award shall be withheld until final determination of the appeal. If the weekly benefit is reduced or rescinded by a final determination, the carrier shall be entitled to reimbursement [from the SIF] in a sum equal to the compensation paid pending the appeal in excess of the amount finally determined. Reimbursement shall be paid upon audit and proper voucher from the second injury fund established in [MCL 418.501 *et seq.*; MSA 17.237(501) *et seq.*]. If the award is affirmed by a final determination, the carrier shall pay all compensation which has become due under the provisions of the award, less any compensation already paid. Interest shall not be paid on amounts paid pending final determination. Payments made to the claimant during the appeal period shall be considered as accrued compensation for purposes of determining attorneys' fees under the rules of the bureau. [MCL 418.862(1); MSA 17.237(862)(1).]

The SIF argues that the WCAC erred in reversing the decision of the magistrate and holding that Beverly was entitled to reimbursement of compensation paid to plaintiff. It contends that the phrase "final determination" in subsection 862(1) refers in all instances to the final determination of the employer's liability for benefits as resolved in an appellate proceeding. That is, only the final appellate decision in the original case, i.e., the claim for benefits filed by the claimant, determines whether an award of benefit stands, and thus whether the employer is entitled to reimbursement of the seventy percent benefits already paid to the claimant. Such a final determination is only rendered as part of the appeal process. Therefore, because the WCAB's November 20, 1990, decision did not reduce or rescind the award to plaintiff, the seventy percent benefits issue became moot when Beverly did not seek leave to appeal the WCAB's decision. The SIF argues that Beverly's petition to stop benefits was a separate action from that filed by plaintiff and that the order granting that relief cannot properly be considered a "final determination of the appeal" authorizing reimbursement to Beverly.

In response, Beverly relies heavily on the fact that, while the statute uses the phrase "final determination of the appeal" three times, the sentence of the statute providing for reimbursement from the SIF speaks only of "a final determination." Beverly argues that the order granting the petition to stop payment was "a final determination" establishing that it had made excessive payments to Charboneau and that it was thus entitled to reimbursement for those payments from the SIF. That is the case, argues Beverly, regardless of the fact that the order granting the petition to

stop payment was not an appellate decision reviewing the original award granted to Charboneau.

This is a case of first impression. In reversing the decision of the magistrate, the WCAC relied on *Hiltz, supra,* and Beverly argues that *Hiltz* is dispositive. The SIF relies on *McAvoy v H B Sherman Co,* 401 Mich 419; 258 NW2d 414 (1977). Both *Hiltz* and *McAvoy* considered subsection 862(1), but only with respect to questions not raised on this appeal. We find they provide no guidance to us in considering the arcane issue presented here.[2]

The primary goal of statutory interpretation is to determine and give effect to the Legislature's intent, and the first step in that process is reviewing the language of the statute itself. *In re MCI Telecommunications Complaint,* 460 Mich 396, 411; 596 NW2d 164 (1999). If the language of the statute is clear and unambiguous, then the statute must be enforced as written and judicial construction is not permitted. *Id.* However, in the present case the statute is ambiguous, as demonstrated by the plausible but differing interpretations given to it by the parties. Therefore, judicial construction is appropriate. *Id.* We construe the statute as a whole, *Weems v Chrysler Corp,* 448 Mich 679, 699-700; 533 NW2d 287 (1995), and seek an

---

[2] Beverly characterizes this case as "rare" and "unique" and the MBRF opines that no employer has previously sought reimbursement for excess compensation paid following a successful petition to stop payments. We do not doubt that the usual order granting a petition to stop payments would have little retroactive effect. However, this case may be unique because the order granting the petition to stop payments here determined that Charboneau had not been entitled to benefits for a long time, since August 1986 shortly after Beverly began paying compensation to her. In this manner, the order was in the nature of a reversal of the initial award, rather than simply a determination that circumstances had changed over time and compensation was no longer warranted.

interpretation of the statute that avoids absurd or unjust results. *Franges v General Motors Corp*, 404 Mich 590, 612; 274 NW2d 392 (1979).

Examining the words of the statute closely, we first note that the opening sentence of subsection 862(1) references "a claim for review" filed pursuant to certain statutory sections. Those sections, some of which are now repealed, provide for (or provided for) appeals to the Worker's Compensation Appeal Board, the Worker's Compensation Appellate Commission, the Court of Appeals, and the Supreme Court. See *Barham v Workers' Compensation Appeal Bd*, 184 Mich App 121, 132; 457 NW2d 349 (1990). We conclude that this opening sentence can most naturally be interpreted as specifying the scope of the section and the worker's compensation payments that it affects. In other words, the entire section has to do with those payments that the opening sentence declares not to be stayed, i.e., those subject to a specified appeal.

Consistent with this interpretation of the first sentence, the remaining provisions of subsection 862(1) usually speak in terms applicable to an appellate review procedure. Payments continue "until final determination of the appeal" and benefits accruing before the award shall be withheld "until final determination of the appeal." "If the award is affirmed by a final determination," the carrier must pay compensation due less compensation paid. Payments made to the claimant "during the appeal period" are considered accrued compensation for purposes of determining attorney fees.

In contrast to all of this, Beverly points to the fourth sentence of subsection 862(1), which speaks of

"a final determination" without reference to that determination being made by an appellate body reviewing a compensation award. However, even that sentence contemplates an appellate procedure; any reimbursement authorized by the sentence is limited to excess compensation paid "pending the appeal." Admittedly, the Legislature may well have more clearly specified its intent by drafting this fourth sentence to read: "If the weekly benefit is reduced or rescinded by a final determination [of the appeal], the carrier shall be entitled to reimbursement in a sum equal to the compensation paid pending the appeal in excess of the amount finally determined." We do not find the Legislature's failure to include the bracketed words, however, to be of any import. In light of the fact that the preceding two sentences both speak of a "final determination of the appeal" and that this sentence itself references "the appeal," we conclude that the Legislature's use of "a final determination" was merely shorthand for "a final determination of the appeal." Use of this shorthand does not undermine our conclusion that the section generally has to do only with awards appealed under one of the specified statutory sections.

As noted earlier, we do not construe statutes in a manner that produces absurd or unjust results. *Franges, supra* at 612. The interpretation of the fourth sentence that Beverly advances would produce just such a result. The fourth sentence authorizes reimbursement from the SIF only for payments made "pending the appeal." Beverly seeks reimbursement of payments made from the time it filed its original appeal of the 1986 award. Beverly thus relies on that appeal to satisfy the "pending the appeal" require-

ment, even though that appeal never resulted in a favorable decision for Beverly.

Although Beverly's interpretation of the statute might thus allow it to "shoehorn" its case into the statute's reimbursement language, it would produce an unfair result in other cases. Most notably, as pointed out by the SIF, no reimbursement relief would be available to employers that are granted a petition to stop payment but that have not filed an appeal of the original award. That would be a nonsensical result that, as the SIF argues, would promote the filing of appeals, frivolous or not, simply to protect the right to reimbursement following a successful petition to stop payment.

What Beverly asks, in effect, is that we read into the statute a provision allowing reimbursement following a successful petition to stop payment. If we do that, we will open up other questions that will have to be answered by reading into the statute further provisions. For example, as just noted, we will have to determine whether reimbursement is allowed in these circumstances only if there is a separately pending appeal of the initial award. We are not a Legislature and are not empowered to graft onto the statute a comprehensive scheme to accommodate a situation obviously not contemplated by the language that has been enacted.

In sum, subsection 862(1) applies only to payments made pursuant to an award that has been appealed under one of the specified statutory sections. Because a petition to stop payment is not a claim for review

under one of those statutory sections,[3] the entire subsection 862(1) has no application to such a petition. The interpretation Beverly would have us give to the section would require that we read into its language provisions that simply are not there. Further, the interpretation Beverly advances would lead to absurd results or unnecessary appeals by employers.[4]

This is not to say that Beverly's arguments have no merit as a matter of public policy. It is certainly plausible for an employer to expect that any final determination of a dispute regarding benefits paid to an employee should result in a right to reimbursement from the SIF, regardless of the nature or procedural posture of that determination. The present § 862(1), however, does not allow that result.

We reverse.

---

[3] The Worker's Disability Compensation Act of 1969 contains provisions establishing a hearing process for determination of petitions to stop, none of which are referenced in subsection 862(1). See *Barham, supra* at 131-132. In addition, the General Rules for the Bureau of Worker's Disability Compensation include a rule authorizing a petition to stop payment, which, again, is not referenced anywhere in subsection 862(1). See 1999 AC, R 408.40.

[4] In making this decision, we are mindful of precedents instructing that we are to give deference to the WCAC in its construction of the statute. See, e.g., *Tyler v Livonia Public Schools*, 459 Mich 382, 388; 590 NW2d 560 (1999). However, we are not bound to follow an administrative interpretation of the statute if we conclude that it is "clearly wrong," *id.*, and for the foregoing reasons, we conclude that this is the case here. Further, we note that the interpretation of the statute applied here by the WCAC has not consistently been adopted at the administrative level. See, e.g., *Bodnar v Leelanau Sands Casino & Bingo Palace*, 1998 Mich ACO 2350 (Under the identical language of subsection 862(2), reimbursement was not allowed because "the medical benefits payable were not reduced by the action of an appellate tribunal but by the action of a magistrate acting on [a] Petition to Stop benefits. This was a separate proceeding, initiated by a different party from the original claim for benefits . . . . The fact that this proceeding took place while the original award was still pending before the Appellate Commission does not serve to bring the rescission of benefits within the purview of § 862.").