*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT DAVIS,

       Plaintiff-Appellant,

v

SECRETARY OF STATE,

       Defendant-Appellee.

UNPUBLISHED
November 21, 2023

No. 363793
Court of Claims
LC No. 20-000196-MZ

Before: PATEL, P.J., and BOONSTRA and RICK, JJ.

BOONSTRA, J. (*concurring in part and dissenting in part*).

I fully concur in the majority's disposition of plaintiff's claim under the Freedom of Information Act, MCL 15.231 *et seq*., as well as with respect to the Court of Claims' order imposing discovery sanctions. I also agree with the majority that the Court of Claims erred by holding that plaintiff had not demonstrated the existence of an actual controversy with respect to his election-law claim. But plaintiff's election-law claim is not moot. In my judgment, the majority errs by concluding otherwise. To that extent, therefore, I respectfully dissent. I would instead vacate the Court of Claims' order granting defendant's motion for summary disposition with regard to that claim and would remand for further proceedings.

This case presents an interesting twist. As the majority acknowledges, the Court of Claims errantly held that no actual controversy existed. Although it therefore had no authority to speak further, the Court of Claims then further erred by proceeding nonetheless to address the merits of plaintiff's election-law claim. Given that the Court of Claims committed both errors, one might, at first blush, wonder whether its first error should be overlooked because once that error is corrected, its second error—considering the merits of plaintiff's claim—would not have been an error. For the reasons that I will explain, however, that too would be wrong.

"Where no case of actual controversy exists, the [trial] court lacks subject matter jurisdiction to enter a declaratory judgment." *Shavers v Attorney General*, 402 Mich 554, 588; 267 NW2d 72 (1978), cert den sub nom *Allstate Ins Co v Kelley*, 442 US 934; 99 S Ct 2869; 61 L Ed 2d 303 (1979). When a trial court determines that it lacks subject-matter jurisdiction over a case, it has determined that it lacks the judicial power to try the case; courts generally then cannot undertake any action other than to dismiss (or transfer) the case. See *Fox v Bd of Regents of Univ*

*of Mich*, 375 Mich 238, 242-243; 134 NW2d 146 (1965). Therefore, having determined that no actual controversy existed, the Court of Claims should have simply dismissed the case; its other statements regarding plaintiff's election-law claim were beyond its authority at that time, not essential to the determination of the case, and thus *obiter dictum* lacking the force of an adjudication. *City of Highland Park v State Land Bank Authority*, 340 Mich App 593, 611; 986 NW2d 638 (2022), citing *Griswold Props, LLC v Lexington Ins Co*, 276 Mich App 551, 557-558; 741 NW2d 549 (2007).

Yet, given our determination that an actual controversy does exist, it would have been appropriate—had the Court of Claims so found—for it to have addressed the merits of plaintiff's election-law claim. The problem—beyond the fact that the Court of Claims had no jurisdiction or authority to pontificate further at that juncture—is that the Court of Claims' analysis of the merits of plaintiff's claim was incomplete and faulty. The Court of Claims did not, for example, address whether the AV ballot application website violates MCL 168.759. The Court of Claims addressed only whether plaintiff had presented sufficient evidence "to create a question of material fact that the on-line application system constitutes a receipt or processing of the applications." An analysis of whether the online application process violates MCL 168.759 would require consideration, for example, of whether it contravenes the requirements of MCL 168.759(2) (that an elector "shall apply in person or by mail"), MCL 168.759(4) (that "[a]n applicant for an absent voter ballot shall sign the application," and restricting who may be "in possession of a signed absent voter ballot application"), and MCL 168.759(6) (establishing a process for the delivery of an application).

The majority then takes the Court of Claims' errors a step further: it concludes that the Court of Claims no longer needs to address the merits of plaintiff's claim because it is moot. I disagree. The majority reaches this conclusion (and thereby avoids the deficiencies of the Court of Claims' analysis of the merits) by manufacturing out of whole cloth a supposed "gap" in MCL 168.759—something that the Court of Claims itself never found, addressed or considered. According to the majority, MCL 168.759 is "silent as to whether voters may apply for an absentee ballot online." But, far from being "silent," MCL 168.759 mandates that voters can only apply for absentee ballots "in person or by mail." It states, in pertinent part:

> [A]t any time during the 75 days before an election, but not later than 8 p.m. on the day of an election, an elector may apply for an absent voter ballot. *The elector shall apply in person or by mail* with the clerk of the township, city, or village in which the voter is registered." [MCL 168.759(1) (emphasis added).]

The Legislature's use of the word "shall" generally denotes a mandatory, rather than permissive, provision. See *Browder v Internat'l Fidelity Ins Co*, 413 Mich 603, 612; 321 NW2d 668 (1982). In other words, the plain language of the above-quoted language is that an elector seeking to apply for an absent voter ballot may do so in two ways: in person or by mail. The language does not, on its face, contemplate that an elector may apply for such a ballot by other means, such as via a website.

It is presumably for this very reason that our Legislature recently passed legislation to amend MCL 168.759 and other statutes to permit the Secretary of State to establish and operate a

online absent voter ballot application system.[1]  These amendatory acts, as the majority points out, are not yet effective.

In other words, the Legislature has chosen to amend Michigan law so that, at some point in the future Michigan voters will explicitly be permitted to apply for an absent voter ballot through an online system.  But the majority deigns itself empowered to go further than the Legislature, and to essentially declare its own amendment of MCL 168.759, effective immediately and with retroactive effect.  In doing so, the majority wholly ignores the separation of powers that undergirds our system of government, vastly overreaches beyond the proper role of the judiciary, and intrudes into an area that falls within the exclusive purview of the Legislature.  See *In re AST*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 362349), slip op at 3 ("Neither this Court nor the circuit court has authority to alter or amend the statutes enacted by the Legislature); see also *Charboneau v Beverly Enterprises, Inc*, 244 Mich App 33, 43; 625 NW2d 75 (2000) ("We are not a Legislature and not empowered to graft onto the statute a comprehensive scheme to accommodate a situation obviously not contemplated by the language that has been enacted.").  Simply put, unless and until the Legislature enacts a statutory amendment, it is not law.  And the judiciary simply is not empowered to act in the Legislature's stead, no matter how desirable a policy outcome might seem.  See *Charboneau*, 244 Mich App at 44 (stating that the defendant's arguments did not necessarily lack merit "as a matter of public policy" but the result sought was not allowed by the present version of the statute).  Although the majority seeks to frame its amendment of MCL 168.759(1) as rejecting a "narrow" or "restrictive" reading of the statute, the simple fact is that majority opinion adds, by judicial fiat, a third way for an voter to apply for an absent voter ballot—a way that is not provided for in the operative statute.  In doing so, the majority speculates regarding the Legislature's intent and goes beyond the operative statute's unambiguous language, in contravention of our clear rules of judicial interpretation.  See, e.g., *Detroit Pub Sch v Conn*, 308 Mich App 234, 248; 863 NW2d 373 (2014) (quotation marks and citations omitted) ("[Nothing may be read into a statute that is not within the intent of the Legislature apparent from the language of the statute itself.  Courts may not speculate regarding legislative intent beyond the words expressed in a statute.").

The majority's error also is not saved by the belated promulgation, under the Administrative Procedures Act, MCL 24.201 *et seq.*, of rules authorizing the use of the AV ballot website.[2]  The rules do not, as the majority again posits, fill a "gap" in MCL 168.759.  But by simply declaring that they do, and by then deeming the issue to be "moot" by virtue of the new administrative rules, the majority skips entirely the most important step in any real analysis of the merits of plaintiff's claim—whether the rules conflict with MCL 168.759, the operative controlling statute.  On their face, the rules appear to legislate an amendment to the statutory requirement that an elector "shall apply in person or by mail."  MCL 168.759.  But such governmental overreach into the legislative sphere, regardless of whether it is carried out by the judiciary (as in this case) or by an administrative agency (as it appears may be the case with respect

---

[1] See 81 PA 2023; 82 PA 2023; 83 PA 2023; 84 PA 2023; 85 PA 2023; and 87 PA 2023, all approved July 18, 2023, and all with an effective date of the ninety-first day after the final adjournment of the 2023 Regular Season.

[2] As the majority notes, Mich Admin Code, R 168.31 through R 168.35 did not become effective until December 19, 2022.

to the administrative rules in question) is plainly improper. *AST*, ___ Mich App at  ___; slip op at 3; *Compagner v Burch*, __ Mich App __, __ n 25; __ NW2d __ (2023).

Moreover, despite the majority's reference to the so-called "plenary" power of the Secretary of State, even the majority admits that the Secretary of State's powers and duties regarding elections are derived from constitutional provisions and statutes; those powers do not extend to the promulgation of rules that conflict with the controlling statute.  See *Mich Ed Ass'n v Secretary of State (On Rehearing)*, 489 Mich 194, 225-226; 801 NW2d 35 (2011).  The majority also appears to argue that the "self-executing" 2022 amendments to the Michigan Constitution provided the Secretary of State with broad authority in the supervision of elections, which extends to the effective amendment of MCL 168.759 prior to the Legislature's amendment.  I note that the constitutional amendment cited by the majority does not refer to an online system for application for absent voter ballots, but rather only creates the right in the voters to "to elect to receive electronic notifications regarding the status of the voter's submitted absent voter ballot application and absent voter ballot."  See Const Art. 2, §  4(1)(i).  Nor does the constitutional amendment cited by the majority permit the Secretary of State to amend or modify election laws.  Indeed, the Court of Claims and this Court has recently held that the Secretary of State has exceeded her authority and contradicted election law on more than one occasion.  See *Lambert v Secretary of State*, unpublished order of the Court of Appeals, issued October 29, 2020 (Docket No. 355266 (denying the Secretary of State leave to appeal the Court of Claims' decision holding that certain instructions for the conduct of elections were inconsistent with state law); *Genetski v Benson*, unpublished opinion and order of the Court of Claims, issued March 9, 2021 (Docket No. 20-000216-MM) (holding that the Secretary of State's instructions regarding signature-matching requirements on absentee ballots were a rule that was required to have been promulgated under the Administrative Procedures Act); *O'Halloran v Secretary of State*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (holding that several instructions for the conduct of elections issued by the Secretary of State were invalid for conflicting with state law, agreeing with the trial court in declining "to read a prophylactic measure into a statue that does not appear in its plain language")[3].

For these reasons, I respectfully dissent from the majority's deeming of the issues raised in plaintiff's election-law claim to be moot, and would instead vacate the Court of Claims' order granting defendant's motion for summary disposition with regard to that claim and remand for further proceedings.


/s/ Mark T. Boonstra

---

[3] The majority's reliance on this Court's decision in *Davis v Secretary of State*, 333 Mich App 588, 597; 963 NW2d 653 (2020), is misplaced.  Although the majority characterizes the plaintiff in that case as having raised an "analogous argument" regarding the Secretary of State's authority to mail absentee ballot applications to registered voters, the inescapable fact is that MCL 168.759 did not speak to the Secretary of State's authority in that regard.  Therefore, although the majority might be able to argue that there was a "gap" in the statute in that respect, it cannot properly do so in this case, in which the Secretary's action blatantly conflicts with the operative statute's mandate that "[*t*]*he elector shall apply in person or by mail*." MCL 168.759(1) (emphasis added).