FROHRIEP v FLANAGAN (ON REMAND)

Docket No. 273426. Submitted January 7, 2008, at Lansing. Decided
April 29, 2008, at 9:00 a.m. Leave to appeal sought.

Eric C. Frohriep and all others similarly situated brought a tort action
in the Ingham Circuit Court against Michigan Department of Edu-
cation (MDE) officials Michael P. Flanagan, Jeremy M. Hughes, and
Frank P. Ciloski in their individual capacities, alleging that the
defendants, in their efforts to implement legislation that required the
MDE to compare its lists of education personnel with lists compiled
by the Michigan State Police of people with criminal convictions, had
falsely identified the plaintiffs as having criminal convictions. The
court, Beverley Nettles-Nickerson, J., granted summary disposition
in favor of the defendants on the ground that an action brought by
the Michigan Education Association involving the same claims be-
tween the same parties was pending. After the plaintiffs' motion for
reconsideration was denied, they appealed. The Court of Appeals,
MARKEY, P.J., and SAWYER and BANDSTRA, JJ., held that the trial court
erred by granting summary disposition on the ground that there was
another action pending between the same parties involving the same
claim, because the present case involves individuals suing individuals
for money damages whereas the other action was brought by a
corporate entity against another corporate entity for declaratory and
injunctive relief. Nevertheless, the Court of Appeals held that the
defendants were entitled to summary disposition because the plain-
tiffs' tort claims were barred by governmental immunity. 275 Mich
App 456 (2007). The Supreme Court, in lieu of granting leave to
appeal, reversed the judgment of the Court of Appeals only with
regard to defendants Hughes and Ciloski. The Supreme Court stated
that MCL 691.1407(2) does not apply to those defendants because
they are individual government employees who are not provided
immunity under MCL 691.1407(5), and because the plaintiffs alleged
intentional torts for which liability was imposed before July 7, 1986.
See MCL 691.1407(3). The Supreme Court remanded the matter to
the Court of Appeals for consideration of the remaining arguments of
Hughes and Ciloski. In all other respects, leave to appeal was denied.
480 Mich 962 (2007).

On remand, the Court of Appeals *held*:

The plaintiffs failed to allege facts in avoidance of common-law qualified immunity in existence before July 7, 1986, which protected government officers, agents, and employees from tort liability. In addition, the plaintiffs failed to allege facts for which relief may be granted under the pleaded tort theories. The trial court's grant of summary disposition with regard to Hughes and Ciloski must be affirmed.

1. An individual government employee's intentional torts are not shielded by the governmental immunity statute, MCL 691.1407. Such tort claims must be analyzed under the law regarding intentional torts as it existed before July 7, 1986. The plaintiffs alleged intentional torts for which liability might have been imposed on governmental employees before July 7, 1986. The common law in Michigan before July 7, 1986, extended immunity from both intentional and negligent torts to government officers, employees, and agents while engaged in discretionary acts within the scope of their authority.

2. Lower-level government officials, employees, and agents are immune from tort liability under the common law when they are acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority, and they are acting in good faith, and performing discretionary, as opposed to ministerial, acts.

3. The plaintiffs asserted no malicious or intentionally unlawful behavior by Hughes or Ciloski. The plaintiffs failed to allege facts sufficient to strip the activities of Hughes and Ciloski of common-law qualified governmental immunity.

4. The plaintiffs failed to state claims of libel per se or tortious interference with a business expectancy against Hughes and Ciloski.

5. The plaintiffs failed to establish a claim of intentional infliction of emotional distress because they failed to allege any conduct by Hughes and Ciloski that was so extreme that it could be called outrageous.

6. The plaintiffs failed to state a claim of false-light invasion of privacy against Hughes and Ciloski.

Affirmed.

TORTS — GOVERNMENTAL IMMUNITY.

Before July 7, 1986, the common law of Michigan extended absolute immunity from all tort liability to judges, legislators, and the highest executive officials of all levels of government whenever they were acting within their judicial, legislative, or executive

authority; lower-level officials, employees, and agents were immune from tort liability only when acting during the course of their employment and acting, or reasonably believed they were acting, within the scope of their authority, and when they were acting in good faith and performing discretionary, as opposed to ministerial, acts; subsection 2 of the governmental tort liability act does not alter the law of intentional torts as it existed before July 7, 1986, and, when an intentional tort is alleged, the claim must be analyzed under the common law as it existed before July 7, 1986 (MCL 691.1407[2] and [3]).

*Hubbard, Fox, Thomas, White & Bengtson, P.C.* (by *Michael G. Woodworth, Thomas A. Bengtson,* and *Mark T. Koerner*), for Eric C. Frohriep and others.

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Denise C. Barton,* Assistant Attorney General, for Jeremy M. Hughes and Frank P. Ciloski.

ON REMAND

Before: MARKEY, P.J., and SAWYER and BANDSTRA, JJ.

PER CURIAM. This case returns to this Court on remand from our Supreme Court, which reversed in part our judgment in *Frohriep v Flanagan,* 275 Mich App 456; 739 NW2d 645 (2007) (*Frohriep I*). Plaintiffs brought this action alleging defendants were liable for the intentional torts of libel per se, interference with business expectancy, intentional infliction of emotional distress, and false-light invasion of privacy. Although the trial court erred by granting defendants' motion for summary disposition under MCR 2.116(C)(6), we held that the trial court nevertheless properly granted defendants summary disposition because defendants were immune from tort liability under MCL 691.1407(2) and (5). In lieu of granting leave to appeal, our Supreme

Court reversed this Court's judgment with regard to defendants Jeremy M. Hughes and Frank P. Ciloski, opining:

> MCL 691.1407(2) does not apply to these defendants because they are individual government employees who are not provided immunity under MCL 691.1407(5), and because the plaintiffs alleged intentional torts for which liability was imposed before July 7, 1986. MCL 691.1407(3) and *Sudul v Hamtramck,* 221 Mich App 455, 458 [562 NW2d 478] (CORRIGAN, J.); 480-481 (MURPHY, J.) (1997). We remand this case to the Court of Appeals for consideration of these defendants' remaining arguments. [*Frohriep v Flanagan,* 480 Mich 962 (2007) (*Frohriep II*).]

On remand, we conclude that plaintiffs failed to allege facts in avoidance of common-law qualified immunity in existence before July 7, 1986, which protected government officers, agents, and employees from tort liability. *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567, 625-635; 363 NW2d 641 (1984). Alternatively, in the event we have misconstrued the scope of the remand order, we also conclude that plaintiffs failed to allege facts for which relief may be granted under the pleaded tort theories. MCR 2.116(C)(8). Accordingly, we again affirm the trial court's grant of summary disposition with regard to defendants Hughes and Ciloski.

### I. FACTUAL BACKGROUND

This case arose from the efforts of the Michigan Department of Education (MDE) to implement 2005 PA 130, which amended MCL 380.1535a, § 1535a of the Revised School Code,[1] and 2005 PA 131, which added MCL 380.1230d, § 1230d of the Revised School Code. At the relevant time, subsection 7 of § 1230d provided:

---

[1] MCL 380.1 *et seq.*

The department of information technology shall work with the [MDE] and the department of state police to develop and implement an automated program that does a comparison of the [MDE]'s list of registered educational personnel with the conviction information received by the department of state police. Unless otherwise prohibited by law, this comparison shall include convictions contained in a nonpublic record. The [MDE] and the department of state police shall perform this comparison during January and June of each year until July 1, 2008. If a comparison discloses that a person on the [MDE]'s list of registered educational personnel has been convicted of a crime, the [MDE] shall notify the superintendent or chief administrator and the board or governing body of the school district, intermediate school district, public school academy, or nonpublic school in which the person is employed of that conviction. [MCL 380.1230d(7) (as enacted by 2005 PA 131).]

Subsection 15 of § 1535a provided as follows:

The department of information technology shall work with the [MDE] and the department of state police to develop and implement an automated program that does a comparison of the [MDE]'s list of individuals holding a teaching certificate or state board approval with the conviction information received by the department of state police. Unless otherwise prohibited by law, this comparison shall include convictions contained in a nonpublic record. The [MDE] and the department of state police shall perform this comparison during January and June of each year until July 1, 2008. If a comparison discloses that a person on the [MDE]'s list of individuals holding a teaching certificate or state board approval has been convicted of a crime, the [MDE] shall notify the superintendent or chief administrator and the board or governing body of the school district, intermediate school district, public school academy, or nonpublic school in which the person is employed of that conviction. [MCL 380.1535a(15) (as amended by 2005 PA 130).]

We refer to these acts and related legislation collectively as school-safety legislation, the obvious intent of which

is to improve the safety of children attending Michigan's schools by removing persons with certain criminal convictions from school employment. *Frohriep I, supra* at 457 n 1.

Defendant Michael P. Flanagan was, and apparently remains, the superintendent of public instruction, the MDE's principal executive officer. Defendant Hughes was the MDE's chief academic officer and deputy superintendent, and defendant Ciloski was the MDE's supervisor of client services.

In a letter from defendant Flanagan, the MDE distributed to the various school districts, intermediate school districts, public school academies, and nonpublic schools lists of employees in their respective school systems with criminal convictions and requested the various school administrators to advise defendant Ciloski of the status of the listed employees. The letter included instructions for correcting the records that were going to be furnished to those school employees who were matched with an entry in the criminal-history database. According to the letter, an employee with a conviction of a "listed offense" had to be dismissed; one with an unlisted felony conviction might be retained if the pertinent school board and superintendent so agreed in writing; and employees with convictions of unlisted misdemeanors might be retained without special action.

The named plaintiff is a certified teacher and a member of the Michigan Education Association (MEA). Alleging that defendants falsely identified him and others similarly situated as having criminal convictions, plaintiff Eric C. Frohriep brought suit, asserting theories of libel per se, interference with business expectancy, intentional infliction of emotional distress, and false-light invasion of privacy.

Plaintiff Frohriep attached to his complaint an affidavit by defendant Hughes attesting that the MDE "undertook an initial attempt . . . before the legislation went into effect, to perform the database comparison" and acknowledged the expectation that the comparison would result in some "false hits." According to Hughes, a "false hit" could arise when the MDE database was compared to the state police criminal-history database through "crossmatching of various data fields, such as name or social security number," and "where some information matched but the person identified on the registry of educational personnel had not in fact been convicted of the associated conviction in the criminal history database." Hughes additionally stated that the MDE "expected that final resolution and final confirmation of the information disclosed on the comparison would be resolved by the school district, intermediate school district, or public school academy in consultation with the employee because this would be the most expeditious way to verify the conviction information." Hughes further averred that the MDE expected that once a school district and an employee were notified of a comparison " 'hit', the district would confirm its accuracy and take appropriate action."

Defendants moved the trial court for summary disposition under MCR 2.116(C)(4), (6), (7), and (8). The trial court granted the motion pursuant to MCR 2.116(C)(6), on the ground that this action was precluded because other related litigation was then in progress, namely *Michigan Ed Ass'n v Michigan Dep't of Ed*, Ingham Circuit Court (Docket No. 06-123-CZ), where the MEA sought injunctive relief to protect its members' reputations and declaratory relief to prevent public release of the comparison data concerning school employees.

On plaintiffs' appeal, this Court held that the trial court erred in failing to recognize that the instant lawsuit and the one cited in support of the motion under MCR 2.116(C)(6) involved different claims and different parties, so the pendency of the MEA action was no bar to this lawsuit. *Frohriep I, supra* at 464-466. Rather than reverse and remand to the trial court, however, we concluded that the trial court had properly granted summary disposition because "plaintiffs' tort claims were barred by immunity granted by law." *Id.* at 467. Specifically, we discussed the "common law of governmental immunity from tort liability for governmental agencies and their employees," which our Supreme Court discussed in *Ross, supra. Frohriep I, supra* at 467. Ultimately, we concluded that defendant Flanagan, because he was the highest executive official of the MDE, was absolutely immune from tort liability pursuant to MCL 691.1407(5).[2] *Frohriep I, supra* at 469-472. With respect to defendants Hughes and Ciloski, we opined, *id.* at 473:

> [P]laintiffs have failed to allege any specific action either defendant took in the furtherance of preparing or distributing the criminal history comparison lists that form the basis of plaintiffs' tort claims. To the extent that Hughes and Ciloski may have assisted the MDE, the MDE is a governmental agency that was engaged in the exercise or discharge of a governmental function. See MCL 691.1401(f).[8] Further, plaintiffs have alleged no facts from which it can be inferred that either Hughes or Ciloski was acting outside the scope of his authority or that they acted in a grossly negligent manner. Accordingly, plaintiffs have failed to plead facts in avoidance of governmental immu-

---

[2] MCL 691.1407(5) provides: "A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority."

nity, *Kendricks* [v *Rehfield*, 270 Mich App 679, 681; 716 NW2d 623 (2006)], and Hughes and Ciloski are immune from plaintiffs' tort claims. MCL 691.1407(2). Defendants were therefore entitled to summary disposition pursuant to MCR 2.116(C)(7).

---

[8] MCL 691.1401(f) provides in part: " 'Governmental function' is an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." Here, the conduct that forms the basis of plaintiffs' tort claims was expressly or impliedly authorized by the school safety legislation.

---

As noted above, in lieu of granting leave to appeal, our Supreme Court reversed this Court's judgment that MCL 691.1407(2) provided immunity to defendants Hughes and Ciloski. The Court's order stated that subsection 2 of § 1407 did not apply to defendants Hughes and Ciloski "because they are individual government employees who are not provided immunity under MCL 691.1407(5), and because the plaintiffs alleged intentional torts for which liability was imposed before July 7, 1986." *Frohriep II, supra* at 962. The Supreme Court remanded this case to this Court "for consideration of these defendants' remaining arguments." *Id.*

## II. ANALYSIS ON REMAND

### A

First, we agree that MCL 691.1407(5) applies only to defendant Flanagan. *Frohriep I, supra* at 472.

Second, because plaintiffs allege intentional torts, we erred in *Frohriep I* in our citation of MCL 691.1407(2) as the legal basis for providing immunity to defendants Hughes and Ciloski. Instead, *Ross, supra*, should be the basis for our analysis regarding these two defendants. Although MCL 691.1407 provides the criteria for

invoking statutory governmental immunity, subsection 7(3) provides: "Subsection (2) does not alter the law of intentional torts as it existed before July 7, 1986." Consequently, "an individual employee's intentional torts are not shielded by our governmental immunity statute . . . ." *Sudul, supra* at 458 (CORRIGAN, J.). When an intentional tort is alleged against an officer or employee of a governmental agency, a governmental agency volunteer, or a member of a board, council, commission, or statutorily created task force of a governmental agency, the law, i.e., claims and defenses, must be analyzed "as it existed before July 7, 1986," i.e., prior to the effective date of subsection 2, which was added by 1986 PA 175. See *Sudul, supra* at 480-481 (MURPHY, J.).

Third, we agree that plaintiffs have alleged intentional torts for which liability might have been imposed on governmental employees before July 7, 1986.[3] On the other hand, this Court has held that "government employees are generally not protected against liability for intentional torts, *Sudul* [*supra* at 458], but that if the acts that are purportedly intentional torts were justified, governmental immunity applies." *VanVorous v Burmeister*, 262 Mich App 467, 480; 687 NW2d 132 (2004), citing *Brewer v Perrin*, 132 Mich App 520, 528;

---

[3] See, e.g., *Tocco v Piersante*, 69 Mich App 616; 245 NW2d 356 (1976), and *Wynn v Cole*, 68 Mich App 706; 243 NW2d 923 (1976), holding that individual government employees did not enjoy immunity from defamation claims but might be protected by qualified privilege. But cf. *Stewart v Troutt*, 73 Mich App 378, 384; 251 NW2d 594 (1977) (noting that a municipal employee would be entitled to an absolute privilege if the alleged defamatory statements were made in the course of carrying out an official duty). These decisions, however, cannot supersede the subsequent decision by our Supreme Court in *Ross, supra*, regarding common-law immunity protecting government employees from tort liability. Nor do we believe that our Supreme Court overruled *Ross* in its remand order in this case.

349 NW2d 198 (1984). As the Court observed in *Brewer*, "at times, the government finds it necessary to do things that would normally be called intentional torts . . . ." *Brewer, supra* at 528. Moreover, *Ross, supra*, was decided before July 7, 1986, and held that governmental employees were protected from tort liability by qualified immunity under the common law. *Ross, supra* at 591-592, 633-634. Indeed, since it was decided, *Ross* has served as the cornerstone for legal analysis regarding governmental immunity and is the seminal pre-July 7, 1986, case for the law on governmental immunity from liability for any tort.

In *Ross*, the Court addressed nine individual cases[4] in which it examined "the extent of immunity from tort liability which the governmental tort liability act [GTLA], MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.*, *and the common law* provide to the state and its agencies, non-sovereign governmental agencies, *and the officers, agents, and employees of these state and local governmental agencies.*" *Ross, supra* at 591 (emphasis added). The Court first noted that the Legislature in enacting the GTLA preserved the common law of "sovereign (state) immunity from tort liability as it existed at the time the statute was enacted." *Ross, supra* at 595, citing MCL 691.1407, now MCL 691.1407(1). The Court held that "the state enjoyed immunity from tort liability at common law whenever it was engaged in the

---

[4] Two of the cases in *Ross* involved allegations of intentional torts against individual government employees: *Willis v Nienow*, 113 Mich App 30; 317 NW2d 273 (1982), and *Trezzi v Detroit*, 120 Mich App 506; 328 NW2d 70 (1982). In *Willis*, this Court held that the plaintiff failed to properly state a claim for an intentional tort and our Supreme Court agreed. *Ross, supra* at 638-641. In *Trezzi*, this Court ruled that the plaintiff's intentional-tort claim was no more than a claim of gross negligence, and the issue was not further pursued in our Supreme Court. *Ross, supra* at 651-652.

exercise or discharge of a governmental function, unless a statutory exception was applicable" and that "[t]he immunity granted to the state by the first sentence of [MCL 691.1407(1)] is essentially coextensive with this common-law immunity." *Ross, supra* at 608.

With respect to individual government employees, the *Ross* Court observed that the GTLA, as it then existed, did "not address whether or when individual officers, employees, and agents are immune from tort liability." *Id.* at 628. "Thus, the existence and scope of individual immunity continues to be a creature of judicial decision-making." *Id.* at 629. The Court's discussion of the history of judicially created tort immunity with respect to government employees leads us to conclude that the principles the *Ross* Court announced apply to the intentional torts alleged against defendants Hughes and Ciloski.

The *Ross* Court observed that at the time of its decision, the scope of immunity from tort liability granted to government officers and employees and agents of governmental agencies was not clear, but before 1979, such "officers, employees, and agents were immune when engaged in discretionary, as opposed to ministerial, acts which were within the scope of their authority." *Id.* at 626. The Court opined:

Michigan's traditional "discretionary/ministerial" approach to individual immunity is somewhat different than [sic] that of other jurisdictions. Michigan case law affords absolute immunity to *all* public officials, employees, and agents for *both intentional and negligent torts* whenever they are engaged in discretionary acts within the scope of their authority. . . . Absolute immunity from tort liability is granted to judges, legislators, and the highest executive officials of all levels of government, even for malicious acts, as long as they are acting within their respective judicial, legislative, and executive authority. Lower level officers,

employees, and agents are extended only qualified immunity. This immunity exists when the individual is engaged in discretionary acts which are performed in good faith. [*Id.* at 631-632 (emphasis added).]

Thus, in our view, the *Ross* Court held that the common law in Michigan extended immunity from both intentional and negligent torts to government officers, employees, and agents while engaged in discretionary acts within the scope of their authority. The Court then defined the scope of this common-law immunity, opining:

We therefore hold that judges, legislators, and the highest executive officials of all levels of government are absolutely immune from all tort liability whenever they are acting within their judicial, legislative, or executive authority. Lower level officials, employees, and agents are immune from tort liability only when they are

1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority;

2) acting in good faith; and

3) performing discretionary, as opposed to ministerial acts.

Under this test, no individual immunity exists for *ultra vires* activities. [*Id.* at 633-634.]

The Court's differentiating between highest-level officials being "absolutely immune from all tort liability" and lower-level officials being "immune from tort liability" only under the specified circumstances, plainly means that lower-level government officials remain potentially liable for either intentional or negligent torts if the conditions of qualified immunity are not satisfied. Indeed, in adopting these criteria, the Court quoted Littlejohn & DeMars, *Governmental immunity after* Parker *and* Perry: *The king can do some*

*wrong*, 1982 Det Col L R 1, 27-28: " 'The policy which only provides a limited immunity to lower level executive officials, unlike the justifications for absolute immunity, reflects a recognition that official immunity should not shield malicious or intentionally unlawful behavior when the actor is not engaged in broad, essential governmental decision-making.' " *Ross, supra* at 632-633.

Applying the *Ross* criteria for qualified immunity to plaintiffs' allegations against defendants Hughes and Ciloski, we conclude that plaintiffs assert no malicious or intentionally unlawful behavior by either defendant. While it may be inferred from plaintiffs' complaint that defendants Hughes and Ciloski played some role as MDE employees regarding the comparison lists, the school-safety legislation required the MDE to provide the lists to school districts. Consequently, plaintiffs' complaint contains no allegations from which it may be inferred that defendants Hughes and Ciloski were engaged in ultra vires activities. In sum, plaintiffs have not alleged facts sufficient to strip the activities of defendants Hughes and Ciloski of the common-law qualified governmental immunity outlined in *Ross*.

Specifically, with respect to the first *Ross* criterion, despite conclusory allegations to the contrary, the only inference that can be drawn from plaintiffs' complaint is that defendants Hughes and Ciloski were acting during the course of their employment with the MDE and acting, or reasonably believed they were acting, within the scope of their authority. *Frohriep I, supra* at 470-471. As we previously observed, "plaintiffs have alleged no facts from which it can be inferred that either Hughes or Ciloski was acting outside the scope of his authority . . . ." *Id.* at 473. The second *Ross* criterion for qualified immunity is also satisfied because there

are no allegations in plaintiffs' complaint that defendants Hughes and Ciloski acted in bad faith. The final *Ross* criterion is also satisfied because plaintiffs have not alleged that defendants Hughes and Ciloski performed only ministerial, rather than discretionary, acts with respect to distributing the comparison lists to school districts. As we stated previously, "plaintiffs have failed to allege any specific action either defendant took in the furtherance of preparing or distributing the criminal history comparison lists that form the basis of plaintiffs' tort claims." *Id*. Indeed, the essence of plaintiffs' complaint is that the MDE failed to first notify the individual school employees that the data comparisons had identified them as having criminal convictions to verify the data matches before forwarding the match information to the local school districts. But to the extent defendants Hughes and Ciloski were involved in the MDE's decision in that regard, that decision was essentially a discretionary decision made to carry out the school-safety legislation.

In summary, although MCL 691.1407(2) does not provide immunity to lower-level governmental officers and employees in the face of a complaint alleging intentional torts pursuant to MCL 691.1407(3), common-law qualified immunity may apply. On the basis of the facts plaintiffs alleged here, we hold that defendants Hughes and Ciloski are entitled to common-law qualified immunity. We, therefore, again conclude that the trial court properly granted defendants summary disposition, albeit for the wrong reason. *Frohriep I, supra* at 473.

B

We also reexamine the merits of plaintiffs' intentional-tort claims against defendants Hughes and

Ciloski. We note that defendants included MCR 2.116(C)(8) among their bases for seeking summary disposition. Defendants also asserted in opposition to plaintiffs' application for leave to appeal in our Supreme Court that plaintiffs' intentional-tort claims failed to state claims for which relief may be granted. Thus, examining the merits of plaintiffs' allegations is within the scope of the remand order to consider "defendants' remaining arguments." *Frohriep II, supra* at 962.

"A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. This Court reviews de novo a trial court's decision regarding a motion for summary disposition under MCR 2.116(C)(8) to determine whether the claim is so clearly unenforceable as a matter of law that no factual development could establish the claim and justify recovery." *Smith v Stolberg*, 231 Mich App 256, 258; 586 NW2d 103 (1998) (citation omitted). In reviewing a trial court's decision on a motion under MCR 2.116(C)(8), this Court accepts as true all factual allegations in the claim and reasonable inferences that may be drawn from them. *Id.*

### 1. LIBEL PER SE

The elements of a defamation action are (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication (defamation per quod). *Kefgen v Davidson*, 241 Mich App 611, 617; 617 NW2d 351 (2000). "A communication is defamatory if, under all the circumstances, it tends to so harm the reputation of an individual that it lowers the

individual's reputation in the community or deters others from associating or dealing with the individual." *Id.* Here, because a false accusation of a criminal conviction could harm plaintiffs' employment, they have alleged libel per se. See *Croton v Gillis*, 104 Mich App 104, 108-109; 304 NW2d 820 (1981).

Defendants argue that the comparison list was not published, but if it were, any participation by defendants was absolutely privileged, citing *Parks v Johnson*, 84 Mich App 162; 269 NW2d 514 (1978). The *Parks* Court noted that the scope of absolute privilege is narrowly applied in Michigan and is generally limited to necessary functions associated with judicial, legislative, or military activities. *Id.* at 166; See also *Oesterle v Wallace*, 272 Mich App 260, 264; 725 NW2d 470 (2006), and *Froling v Carpenter*, 203 Mich App 368, 371-372; 512 NW2d 6 (1994). But the allegations of plaintiffs' complaint support the finding that defendants Hughes and Ciloski are protected by a qualified privilege. All government employees have a qualified privilege when acting within the scope of their employment. *Parks, supra* at 168.

A "qualified privilege extends to all communications made bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty and embraces cases where the duty is not a legal one but is of a moral or social character of imperfect obligation." *Hall v Pizza Hut of America, Inc*, 153 Mich App 609, 619; 396 NW2d 809 (1986). A plaintiff asserting defamation must overcome a qualified privilege by showing that the alleged libelous publication was made with actual malice, i.e., with knowledge of its falsity or reckless disregard of the truth. *Id.* at 620; *Prysak v RL Polk Co*, 193 Mich App 1, 15; 483 NW2d 629 (1992). General allegations of malice

are insufficient to make this required showing. *Hall, supra* at 620; *Prysak, supra* at 15. Plaintiffs' allegation, supported by the Hughes affidavit, that defendants expected some "false hits" to arise from the data comparisons the school safety legislation required is insufficient to establish actual malice. "Reckless disregard for the truth is not established merely by showing that the statements were made with preconceived objectives or insufficient investigation." *Grebner v Runyon,* 132 Mich App 327, 333; 347 NW2d 741 (1984).

Moreover, plaintiffs' complaint alleges that it was the Department of Information Technology and the Department of State Police, not defendants Hughes or Ciloski, that prepared the comparison lists. The matches resulting from comparing MDE records to criminal-history records that are generally available to the public was mailed to Michigan school districts by defendant Flanagan, not by defendants Hughes or Ciloski. Although plaintiffs allege all defendants "disseminated, or participated in the dissemination" of the comparison results, "Michigan has generally held that claims of libel must be pleaded with specificity." *Royal Palace Homes, Inc v Channel 7 of Detroit, Inc,* 197 Mich App 48, 52; 495 NW2d 392 (1992). As we observed in our prior opinion, plaintiffs do not specifically allege anything that either Hughes or Ciloski did in either preparing or distributing the criminal-history comparison lists. *Frohriep I, supra* at 470. Consequently, plaintiffs have failed to state a claim of libel per se against defendants Hughes and Ciloski on which relief may be granted.

### 2. INTERFERENCE WITH A BUSINESS EXPECTANCY

For plaintiffs to succeed on their claim of intentional interference with a business expectancy, they "must allege that the interferer did something illegal, unethi-

cal or fraudulent." *Early Detection Ctr, PC v New York Life Ins Co*, 157 Mich App 618, 631; 403 NW2d 830 (1986). Plaintiffs must, stated differently, " ' "allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." ' " *Prysak, supra* at 12, quoting *Stanton v Dachille*, 186 Mich App 247, 255; 463 NW2d 479 (1990), quoting *Feldman v Green,* 138 Mich App 360, 378; 360 NW2d 881 (1984). Here, plaintiffs have not alleged that defendants Hughes and Ciloski did anything illegal, unethical, or fraudulent. Rather, in assisting the MDE to comply with the school-safety legislation, defendants acted lawfully and justifiably. Consequently, plaintiffs have failed to state a claim of tortious interference for which relief may be granted.

### 3. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

To establish a claim for intentional infliction of emotional distress, plaintiffs must show (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *Lewis v LeGrow*, 258 Mich App 175, 196; 670 NW2d 675 (2003). "Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.' " *Id.*, quoting *Linebaugh v Sheraton Michigan Corp*, 198 Mich App 335, 342; 497 NW2d 585 (1993). Plaintiffs have not alleged any conduct by defendants Hughes and Ciloski that is so extreme it could be called "outrageous." Thus, relief may not be granted on this claim.

4. FALSE-LIGHT INVASION OF PRIVACY

False-light invasion of privacy requires a communication broadcast to the public in general or publicized to a large number of people that places the injured party in a light that would be highly offensive to a reasonable person. The actor must have had knowledge of or acted in reckless disregard of the falsity of the publicized matter and the false light in which the other would be placed. *Early Detection, supra* at 630; See also *Hall, supra* at 617-618, and *Porter v Royal Oak*, 214 Mich App 478, 486-487; 542 NW2d 905 (1995).

Here, even if defendants Hughes and Ciloski published the comparison lists, the publication was not "to the public in general or publicized to a large number of people . . . ." *Early Detection, supra* at 630. In fact, the comparison lists were sent only to the affected school districts with the expectation that if there were any erroneous matches, they would be appropriately corrected. Under these facts, plaintiffs' complaint fails to state a claim of false-light invasion of privacy against defendants Hughes and Ciloski on which relief may be granted.

In summary, plaintiffs' complaint fails to state a claim on which relief may be granted under the intentional-tort theories asserted against defendants Hughes and Ciloski. Therefore, we again conclude that the trial court properly granted summary disposition to defendants Hughes and Ciloski, albeit for the wrong reason. *Frohriep I, supra* at 473.

We affirm.