**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 14a0563n.06

**Case No. 13-2392**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| WILLIAM ELIAS; ELIAS REAL ESTATE LLC; TAXFASTER LLC; MOODY, KEEGAN, NELSON & ASSOCIATES PLLC, | ) ) ) ) | **FILED** Jul 25, 2014 DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| FEDERAL HOME LOAN MORTGAGE CORPORATION, a corporation chartered by the United States Congress, | ) ) ) ) | O P I N I O N |
| Defendant-Appellee. | ) | |

BEFORE: BOGGS, COLE, and STRANCH, Circuit Judges.

COLE, Circuit Judge. In October 2012, the Federal Home Loan Mortgage Corporation, better known as Freddie Mac, added plaintiff William Elias and his real-estate businesses to its Exclusionary List. The List identifies individuals and businesses whom Freddie Mac suspects of engaging in fraud or whose business practices are deemed to present an "undue risk" to Freddie Mac. After an entity has been placed on the List, it may no longer participate, directly or indirectly, in any mortgage transaction involving Freddie Mac. Elias alleges that his inclusion on the List has caused his real-estate businesses to collapse because third-party mortgage servicers will no longer deal with them. He filed suit alleging (1) tortious interference with a business relationship or expectancy and with contracts, (2) defamation, (3) state and federal antitrust

violations, and (4) civil conspiracy. The district court granted Freddie Mac's motion to dismiss for failure to state a claim. We affirm.

## I. OVERVIEW

### A. Factual Background

William Elias, a Michigan real-estate broker, is the chief executive officer and owner of Elias Realty LLC, as well as the single-member owner of Taxfaster LLC, which does business as Moody, Keegan, Nelson & Associates, PLLC ("Moody Keegan"). Before the events underlying this suit, much of Elias's business involved facilitating short sales of real estate as an alternative to foreclosure. As one of the nation's largest holders of mortgages, Freddie Mac is often involved in short sales, typically through its mortgage servicers, and has guidelines as to when it will approve a short sale or permit its servicers to do so. These guidelines seek to minimize Freddie Mac's losses and require, among other things, that the borrower demonstrate an eligible hardship and be delinquent on his or her mortgage payments.

On October 1, 2012, Elias received a notice from Freddie Mac stating that it was considering adding Elias and his business entities to its Exclusionary List. As Freddie Mac explains, an entity may be added to the List because Freddie Mac believes it has engaged in unlawful or unethical conduct, such as fraud or regulatory violations. Additionally, an entity can be added due to "[o]ther grounds that in Freddie Mac's judgment may adversely affect Freddie Mac," such as business practices that pose an "undue risk" to the corporation. After being placed on the List, entities are barred from (1) selling any loan to Freddie Mac, (2) servicing any Freddie Mac loan or property, and (3) participating in the origination, transfer, or servicing of any loan subsequently acquired by Freddie Mac, or participating in the transfer of the associated real-estate property. Under the third limitation—which is particularly broad—Freddie Mac will

not acquire a loan if an excluded entity was involved at any stage in the associated property's chain of title, regardless of who presently holds the loan or property.

Freddie Mac's notice to Elias contained three main allegations: (1) that Elias, and his alias Thomas Glassman, had instructed at least five short-sale sellers whose mortgages were held by Freddie Mac to buy a new home before engaging in a short sale, thereby misrepresenting their financial situation in order to qualify for the sale; (2) that Moody Keegan kept fees from some short-sale transactions that should have been remitted to Freddie Mac, while attempting to conceal this practice; and (3) that a business entity affiliated with Elias impermissibly accepted up-front fees from a seller. Freddie Mac instructed Elias that he had ten days to respond to the letter and that he would not be added to the List until his response had been reviewed. Elias responded, denying all allegations, and submitted an affidavit among other extensive supporting documents. On October 31, 2012, Freddie Mac notified Elias that his name, as well as his business entities Elias Realty, Taxfaster, and Moody Keegan, would be added to the List "to prevent undue risk to the company."

Additionally, after Freddie Mac had notified Elias that he might be added to the List, but before Elias's ten-day response period ended, Freddie Mac notified at least three mortgage servicers that it was considering placing Elias on the List. One of these servicers, CitiMortgage, passed this information along to a client of Elias. In response to Freddie Mac's concerns, these servicers refused to complete pending short-sale transactions with Elias Realty.

Elias alleges that placement on the List has irreparably harmed his businesses because mortgage servicers will no longer transact with them. Not only has Elias had to cancel "hundreds of short sale transactions" and lose the revenue associated with those deals, his realty firm has collapsed, resulting in the layoff of over one hundred employees.

**B.  Procedural History**

Elias and his businesses filed a complaint in the United States District Court for the Eastern District of Michigan on January 31, 2013, along with a motion for a temporary restraining order.  The court denied Elias's request for a TRO but set a date for a hearing on the preliminary injunction that Elias had requested in his complaint.  In the meantime, Freddie Mac filed a motion to dismiss for failure to state a claim, as well as responses opposing Elias's request for injunctive relief.  The court then cancelled the preliminary injunction hearing and instead scheduled a hearing on Freddie Mac's motion to dismiss.

On the day of the hearing, Freddie Mac sought to file with the court public records in support of its motion to dismiss.  These records included an affidavit for a search warrant on Elias's business addresses, which was approved by a federal magistrate judge in February 2013. Elias moved to strike the records, and the court granted Freddie Mac's motion to dismiss without any discussion of the records or the allegations they contained.  *See Elias v. Federal Home Loan Mortg. Corp.*, No. 13-10387, 2013 WL 5372887 (E.D. Mich. Sept. 25, 2013).  Elias timely appealed.  Although Freddie Mac asks us to consider the public records on appeal, we do not find it necessary to do so.

## II.  ANALYSIS

**A.  Standard of Review**

This court reviews de novo a district court's dismissal of a plaintiff's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *See, e.g.*, *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).  The court will "accept as true all the allegations contained in the complaint and construe the complaint liberally in favor of the plaintiff," but it is not required to credit "legal conclusions or unwarranted factual inferences."  *Id.*  A complaint

must "contain either direct or inferential allegations respecting all material elements" of the plaintiff's claims, *Bishop v. Lucent Techs.*, 520 F.3d 516, 519 (6th Cir. 2008) (internal quotation marks omitted), and must "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). In assessing the claims raised in a complaint, the court may consider any "document referred to or attached to the pleadings, and integral to the plaintiff's claims." *Burns v. United States*, 542 F. App'x 461, 466 (6th Cir. 2013) (per curiam).

Because the parties are diverse, this court applies the substantive law of Michigan, the forum state. *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008). We must follow the precedent of the state's highest court but may also consider decisions from intermediate-level appellate courts as persuasive so long as they do not contradict those of the highest court. *Id.*

## B. Tortious Interference

As his first claim, Elias alleges that Freddie Mac tortiously interfered with his and his entities' business relationships and contracts by notifying certain third parties that it was considering adding Elias to the Exclusionary List, and then by actually adding him. As a result, various mortgage servicers halted their pending transactions involving Elias and refused to negotiate new deals with him. The district court dismissed Elias's tortious-interference claims after concluding that Elias had raised "no plausible allegations that Freddie Mac was motivated by anything other than its legitimate business purpose" in placing Elias on the List. *Elias*, 2013 WL 5372887, at *3. We agree.

Under Michigan law, a claim of tortious interference in a business relationship or expectancy consists of the following elements: "[1] the existence of a valid business relationship or expectancy, [2] knowledge of the relationship or expectancy on the part of the defendant, [3]

intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and [4] resultant damage to the plaintiff." *Cedroni Ass'n, Inc. v. Tomblinson, Harburn Assocs., Architects & Planners, Inc.*, 821 N.W.2d 1, 3 (Mich. 2012) (internal quotation marks omitted); *Mino v. Clio Sch. Dist.*, 661 N.W.2d 586, 597 (Mich. Ct. App. 2003). A claim of tortious interference with a contract consists of similar, but not identical, elements. *See Knight Enters., Inc. v. RPF Oil Co.*, 829 N.W.2d 345, 348 (Mich. Ct. App. 2013).

Our analysis of Elias's tortious-interference claims begins and ends with the third element. For both types of tortious-interference claims, this element contains additional requirements: the defendant's interference must involve either "the intentional doing of a per se wrongful act *or* the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Badiee v. Brighton Area Schs.*, 695 N.W.2d 521, 539 (Mich Ct. App. 2005) (emphasis added) (internal quotation marks omitted); *see also Wilkinson v. Powe*, 1 N.W.2d 539, 542 (Mich. 1942); *Knight Enters.*, 829 N.W.2d at 348. When a defendant's acts are "motivated by legitimate business reasons," it does not act with malice and a lack of justification. *Mino*, 661 N.W.2d at 588 (quoting *BPS Clinical Labs. v. Blue Cross & Blue Shield of Mich.*, 552 N.W.2d 919, 925 (Mich. Ct. App. 1996)); *see also Urban Assocs., Inc. v. Standex Elecs.*, 216 F. App'x 495, 514 (6th Cir. 2007) (collecting cases).

Elias asserts both that Freddie Mac has committed a per se unlawful act and that it has taken several actions indicative of malice. These two assertions are legal conclusions that the court need not accept in the absence of supporting factual allegations. *Kottmyer*, 436 F.3d at 688. Michigan's courts have explained that an act is considered per se wrongful if it is "inherently wrongful" or "never justified under any circumstances." *Formall, Inc. v. Cmty. Nat'l*

*Bank of Pontiac*, 421 N.W.2d 289, 293 (Mich. Ct. App. 1988). But the courts have not been quick to find malice under the per se standard, and, given the notable lack of cases relying on this theory, it is not even clear what sorts of acts would qualify. Although Elias is not required to cite legal precedent in his complaint, he has not identified, in his briefs or during argument, any Michigan cases suggesting that Freddie Mac's behavior would be considered per se wrongful. We therefore reject this conclusory allegation.

Next, Elias argues that Freddie Mac's disclosures were maliciously and unjustifiably aimed at punishing him for failing to ensure that Freddie Mac gained as much of the short-sale proceeds as possible, and for acting in the best interests of his clients, the short-sellers. Elias further notes that he has identified specific, affirmative acts by Freddie Mac that are suggestive of malice, as Michigan law requires. *See BPS*, 552 N.W.2d at 925. But Elias's factual allegations are deficient in two respects.

First and foremost, Elias admits—in the very text of his complaint—to having engaged in a particular business practice that Freddie Mac identified as one of its grounds for investigating him and then placing him on the Exclusionary List. In its notice to Elias, Freddie Mac explained that it suspected Moody Keegan of collecting, as its fee, pro-rated property taxes paid in advance by the short-sale seller that should have been remitted to Freddie Mac at the time of the sale, a practice that "[Elias] knew Freddie Mac would not approve." Elias does not dispute that he collected fees in this roundabout manner—in fact, he acknowledges in his complaint that "[i]f a loan servicer disallows the borrower-short seller from paying his counseling and mitigation fee to [Moody Keegan] out of the settlement proceeds, then according to the contract between [Moody Keegan] and the seller, *the seller directs the purchaser to pay the pro-rated taxes to*

[Moody Keegan]" (emphasis added). Elias defends this practice by asserting that Freddie Mac is not contractually entitled to tax pro-rations.

By confirming Moody Keegan's collection of these taxes as fees, Elias has provided Freddie Mac with a legitimate business reason for investigating him and for communicating this information to third-party entities that would be affected by Elias's inclusion on the List. *See Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 824, 826 (9th Cir. 2008) (concluding that plaintiff's practice of encouraging borrowers to apply for initial loans with high interest rates, and then instructing them to refinance shortly thereafter, gave Freddie Mac a legitimate reason to place plaintiff on the List even though this practice was not unlawful.) Moreover, Elias makes no claim that Freddie Mac knowingly allowed *other* real estate agents to collect pro-rated taxes as fees, which could support an inference that Freddie Mac's reasons for placing Elias on the List were pretextual.

A second problem afflicts Elias's complaint: he does not plausibly support the conclusion that Freddie Mac acted with malice. Elias argues that Freddie Mac was motivated by a desire to punish Elias and shut down his real estate businesses because they did not put Freddie Mac's financial interests ahead of their clients' interests. To support this contention, he argues that Freddie Mac knowingly allowed other, larger mortgage servicers to provide sellers with advice that would likewise cause Freddie Mac to lose money, and he claims that this disparate treatment is prima facie evidence of malicious intent. But, accepting these allegations as true, Elias provides no facts to indicate that Freddie Mac was aware that other servicers were giving inappropriate advice. Elias also points out that Freddie Mac filed a complaint about Elias with the Michigan Department of Licensing and Regulatory Affairs—but, similarly, he provides no plausible reason to believe that this complaint was lodged for improper reasons, rather than to

protect Freddie Mac from business practices it believed were questionable. And, lastly, Elias argues that the timing of Freddie Mac's disclosures is indicative of malice, since Freddie Mac notified three servicers—Wells Fargo, CitiMortgage, and Fifth-Third Bank—of its investigation before giving him time to respond. But these disclosures do not indicate malice in light of the fact that, *by Elias's own admission*, Freddie Mac had reason to believe that Elias was circumventing its short-sale requirements and that Freddie Mac would therefore not approve the pending transactions involving these three servicers. *Cf. Coronet Dev. Co. v. FSW, Inc.*, 150 N.W.2d 809, 812 (Mich. 1967) (finding "no wrongful act" where widow cancelled pending sale, by husband's corporation, of assets of husband's estate, allowing the corporation to accept a better offer); *Via the Web Designs, L.L.C. v. Beauticontrol Cosmetics, Inc.*, 148 F. App'x 483, 487–88 (6th Cir. 2005) (no malice where cosmetics company instructed its independent consultants not to advertise on plaintiff's unauthorized website); *Mino*, 661 N.W.2d at 598 (no malice where former colleagues of candidate for new job informed search committee of candidate's alleged acts of impropriety in his prior job).

Ultimately, Elias has failed to plead facts supporting his allegation that Freddie Mac maliciously sought to interfere with his business relationships by placing his name on the List or by informing mortgage servicers that it was investigating him. Rather, Elias's complaint shows that Freddie Mac had a legitimate business reason for placing Elias and his entities on the List. The district court correctly dismissed this claim.

## C. Defamation

Second, Elias alleges that Freddie Mac defamed him and his businesses by adding their names to the List and by informing Wells Fargo, CitiMortgage, and Fifth-Third Bank that Elias's businesses were being considered for inclusion on the List. Elias claims that these actions were

tantamount to accusing him of fraud or improper conduct and caused third parties to stop transacting with him. The district court dismissed this claim on two grounds: first, it concluded that Freddie Mac's allegedly defamatory statements were not false, and second, it reasoned that Freddie Mac's communications were protected by a qualified privilege. *Elias*, 2013 WL 5372887, at *3. Again, we agree.

To succeed on a defamation claim in Michigan, a plaintiff must prove each the following: (1) "a false and defamatory statement concerning the plaintiff"; (2) "an unprivileged communication to a third party"; (3) "fault amounting to at least negligence on the part of the publisher"; and (4) that the statement either amounts to defamation per se or that it caused "special harm." *Rouch v. Enquirer & News of Battle Creek, Mich.*, 487 N.W.2d 205, 211 (Mich. 1992). "A communication is defamatory if it tends to lower an individual's reputation in the community or deters third persons from associating or dealing with that individual." *Ireland v. Edwards*, 584 N.W.2d 632, 636 (Mich. Ct. App. 1998). To constitute defamation, a statement must purport to "stat[e] actual facts about the plaintiff" and must contain enough objective matter to be "provable as false." *Id.* at 636–37 (internal quotation marks omitted).

The district court concluded that Freddie Mac's statements about Elias were not "provably false" because they were not objective or specific enough to meet this standard. We agree that the statements were not false, although we do not address the question of whether they are categorically too subjective to count as defamation. As discussed above, Elias acknowledges that Moody Keegan routinely collected fees which Freddie Mac disallows. In light of this admission, Freddie Mac did not falsely represent that—according to its own criteria—Elias's business practices posed an undue risk, or that Elias failed to comply with its short-sale requirements. And although Elias asserts that inclusion on the List is *necessarily* equivalent to

an accusation of fraudulent or illegal business practices, his complaint and its attachments simply do not demonstrate that this is the case.

Moreover, the district court properly concluded that Freddie Mac's disclosures were protected by Michigan's qualified privilege, which applies when parties share an interest in the information being transmitted, or when one party owes a duty to communicate information to the other. *Prysak v. R.L. Polk Co.*, 483 N.W.2d 629, 636 (Mich. Ct. App. 1992) (qualified privilege applies where defendant shows "(1) good faith, (2) an interest to be upheld, (3) a statement limited in its scope to this purpose, (4) a proper occasion, and (5) publication in a proper manner and to proper parties only"); *see also Trimble v. Morrish*, 116 N.W. 451, 452 (Mich. 1908). The qualified privilege can be overcome if the defendant acted with actual malice, meaning with knowledge of the statement's falsity or with reckless disregard of the truth. *Frohriep v. Flanagan*, 754 N.W.2d 912, 923 (Mich. Ct. App. 2008), *rev'd in part on other grounds*, 763 N.W.2d 279 (Mich. 2009); *see also Hall v. Pizza Hut of Am.*, 396 N.W.2d 809, 814 (Mich. Ct. App. 1986) (defining malice as bad faith).

Freddie Mac and its mortgage servicers have a common interest in minimizing risk and fraud in their short-sale transactions, and the public has an interest in ensuring the integrity and stability of the secondary mortgage market, which provides liquidity for consumer loans. *See Family Home*, 525 F.3d at 827 (holding that California's common interest privilege applies to disclosure of names on Exclusionary List); *see also Prysak*, 483 N.W.2d at 636 (qualified privilege applies to communication between plaintiff's employer and third party, where plaintiff had access to third party's confidential information at work and threatened to disclose it improperly); *Gonyea v. Motor Parts Fed. Credit Union*, 480 N.W.2d 297, 300 (Mich. Ct. App. 1991). Furthermore, as Freddie Mac points out, Elias does not refute on appeal the argument

that a common interest is shared by Freddie Mac, its mortgage servicers, and other real-estate entities that transact with Freddie Mac and that have access to the Exclusionary List. Instead, Elias claims that he has identified evidence of malice sufficient to overcome the privilege. If malice is defined as knowing falsity or reckless disregard for the truth, *see Frohriep*, 754 N.W.2d at 923, it does not apply in light of Elias's admission regarding Moody Keegan's fee-collecting practices. And if instead malice is defined more broadly as bad faith, *see Hall*, 396 N.W.2d at 814, the facts Elias alleges do not plausibly support a finding of malice, for the reasons discussed above in regard to tortious interference.

Finally, the facts and allegations contained in Elias's complaint also do not suggest that Freddie Mac's disclosures were unduly broad so as to defeat the privilege. *See, e.g.*, *Prysak*, 483 N.W.2d at 636. Elias's complaint and supporting materials establish that Freddie Mac informed three mortgage servicers that it was investigating Elias, but do not demonstrate that Freddie Mac provided them with any details about the investigation. And Elias's allegation that the Exclusionary List is not privileged or confidential is refuted by an exhibit attached to his complaint and discussed in its text. Though Elias contends that Freddie Mac or its "agents" informed one of Elias's clients that he was being investigated for inclusion on this List, this allegation is likewise contradicted by an email attached to his complaint, which shows that a mortgage servicer—not Freddie Mac—notified the client. Elias's complaint does not plausibly allege that Freddie Mac publicized the List to parties not sharing a common interest with it, or that Freddie Mac's disclosures contained information broader than necessary to advance the interests it shared with other mortgage servicers and real-estate entities. The district court correctly dismissed Elias's defamation claims.

## D.  Antitrust Violations

Next, Elias alleges that Freddie Mac violated federal and state antitrust law by placing his name on its Exclusionary List and thereby encouraging other market participants not to transact with him.  The district court rejected this claim after concluding, first, that Freddie Mac did not violate antitrust law under the per se approach or the rule of reason approach, and second, that Elias had failed to identify the relevant geographic market allegedly suffering anticompetitive effects.  *Elias*, 2013 WL 5372887, at *4.

We can affirm the district court's conclusion on a simpler basis: Elias has not pleaded, let alone plausibly claimed under the *Twombly* standard, that Freddie Mac's actions harmed *competition* in the relevant market, as the Sherman Act requires.  *See Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 977 (6th Cir. 2000); *see also Abercrombie & Fitch Stores v. Amer. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002) (appellate court may affirm dismissal on grounds different than district court's).  Elias's complaint focuses almost exclusively on harm allegedly done to Elias and his businesses.  Although the complaint states that "the Exclusionary List precludes [other] market participants, including servicers, from dealing" with Elias, it does not claim that this outcome harms anyone other than Elias and his businesses.  And although the complaint adds that "the public interest suffers where entities are excluded from the market and are unable to provide borrowers with short sale consultation services," it does not plead that prospective short-sellers have in fact been impeded from obtaining the services they require.

In other cases with similarly deficient pleading, this court has held that the plaintiff lacked antitrust standing—a concept distinct from Article III standing—and has affirmed the district court's dismissal.  *See Indeck Energy*, 250 F.3d at 977 (affirming Rule 12(b)(6) dismissal

and observing that "the record in this appeal presents no indication that *competition* itself was harmed by any of the defendants."); *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) (en banc) (noting that this circuit "has dismissed numerous lawsuits for lack of antitrust standing under Rule 12(b)(6)" and listing cases).

Elias's state-law claim fails for the same reason. As Elias acknowledges in his complaint, Michigan's statutes parallel the Sherman Act. *See Blair v. Checker Cab Co.*, 558 N.W.2d 439, 442 (Mich. Ct. App. 1996) (looking to federal courts' antitrust precedent to resolve state-law claim); Mich. Comp. Laws § 445.784(2) ("[I]n construing all sections of this act, the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes . . . ."); *see also Mercy Mem. Hosp. v. Porter*, No. 212223, 1999 WL 33326821, at *3 (Mich. Ct. App. Dec. 21, 1999) (quoting the United States Supreme Court's statement that "antitrust laws were enacted for the protection of competition, not competitors" and affirming dismissal for failing to state an "antitrust injury" (alteration and internal quotation marks omitted)).

Elias makes slightly more effort in the state-law section of his complaint to establish market-wide harm. He claims that "Freddie Mac's use of the Exclusionary List . . . further cements [its] dominance in that market, constituting attempted monopolization." But once again, his allegations do not establish that anyone other than Elias and his businesses was injured by Freddie Mac's actions. Elias and Freddie Mac operate in related but distinct markets, and the complaint does not provide any insight into how Freddie Mac's refusal to deal with certain real-estate brokers, such as Elias, allows it to monopolize the market in secondary mortgages and mortgage-backed securities. Nor does it explain in even the most general terms how other real-

estate agencies or consumers are hurt by Freddie Mac's actions. We accordingly affirm the dismissal of Elias's federal and state antitrust claims.

## E. Civil Conspiracy

Lastly, Elias alleges that Freddie Mac formed a civil conspiracy with mortgage servicers, lenders, and other third parties, designed to exclude Elias and his companies from the real-estate market. As the district court noted, "a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Advocacy Org. for Patients & Providers v. Auto Club. Ins. Assocs.*, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003) (quoting *Early Detection Ctr., P.C. v. New York Life Ins. Co.*, 403 N.W.2d 830, 836 (Mich. Ct. App. 1986)); *see also Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351, 358–59 (Mich. Ct. App. 1992). Because we affirm the dismissal of Elias's other claims, we must likewise affirm the dismissal of this claim.

## III. CONCLUSION

For the reasons addressed above, we affirm the district court's dismissal of the plaintiffs' claims.